**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MOISTTECH CORPORATION,

    Plaintiff,

vs.

                                      CASE NO. 8:15-cv-00434-EAK-TBM

SENSORTECH SYSTEMS, INC.,

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR FOR STAY PENDING ARBITRATION OR FOR TRANSFER**

THIS CAUSE is before the Court on Defendant's Motion to Dismiss the Complaint or for Stay Pending Arbitration or for Transfer (Doc. 6), Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint or for Stay Pending Arbitration or for Transfer (Doc. 10), and Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint or for Stay Pending Arbitration or for Transfer (Doc. 13). For the reasons set forth below, Defendant's Motion for Transfer is GRANTED.

**PROCEDURAL HISTORY**

Plaintiff, MoistTech Corporation, filed this action in the Circuit Court of the Thirteenth Judicial Circuit, in and for the State of Florida, County of Hillsborough on February 10, 2015. Defendant, Sensortech Systems, Inc., filed a Notice of Removal (Doc. 1) on March 2, 2015. Plaintiff's Complaint (Doc. 2) was filed in the United States District Court, Middle District of Florida, Tampa Division on March 2, 2015. Defendant filed a Motion to Dismiss the Complaint or for Stay Pending Arbitration or for Transfer (Doc. 6) on March 7, 2015. Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss the Complaint or for Stay Pending

Arbitration or for Transfer (Doc. 10) on April 2, 2015. Defendant filed a Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint or for Stay Pending Arbitration or for Transfer (Doc. 13) on April 24, 2015. The following are found to be facts for the purpose of resolving the instant motion.

## STATEMENT OF THE FACTS

Plaintiff, MoistTech Corporation, ("MoistTech") is a corporation organized and existing under the laws of Florida. Defendant, Sensortech Systems, Inc., ("Sensortech") is a corporation organized and existing under the laws of Illinois and has its principal place of business in California. Sensortech was formed in 1983 to develop and market moisture detection and measurement systems. Sensortech originally had three shareholders: Colin Hanson, John Fordham, and Roger Carlson. MoistTech was originally a division of Sensortech created in 2004 to expand Sensortech's development and marketing of moisture detection systems through neon-infrared ("NIR") technology. In 2013, MoistTech was separated from Sensortech. John Fordham and Roger Carlson became the sole owners of MoistTech and Colin Hanson became the sole owner of Sensortech. The separation was described in the "AGREEMENT AND PLAN FOR STOCK REDEMPTION AND RELEASE AGREEMENT" ("Agreement"). The Agreement included a forum-selection clause and an arbitration clause.

Plaintiff's suit against Defendant alleges (1) False Advertising in Violation of the Lanham Act and (2) Common Law Unfair Competition under Florida Law. Plaintiff alleges that Defendant utilized components of inventory that should have been provided to Plaintiff as part of the separation of the companies. Plaintiff alleges that Defendant sold NIR moisture control systems with virtually identical design of Plaintiff's sensors, copied Plaintiff's photographs, and

copied Plaintiff's website. Further, Plaintiff alleges that Defendant removed the casing of MoistTech sensors and installed different casings with the Sensortech marking.

Defendant has brought this Motion requesting dismissal of the case, or for stay pending arbitration, or for transfer. Defendant argues that the Agreement governs this dispute and that the arbitration clause and the forum-selection clause are binding on Sensortech and MoistTech.

## DISCUSSION

### MoistTech is Bound by the Forum-Selection Clause

Plaintiff argues that it cannot be bound by the forum-selection clause because MoistTech is not a party to the Agreement. (Doc. 10:10). "'In order to bind a non-party to a forum-selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.'" *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

In *Lipcon*, spouses of two Lloyd's "Names" signed letters of credit to provide collateral for their husbands. *Id.* at 1288. Despite not signing the "General Undertaking" that contained the forum-selection clause at dispute, the Eleventh Circuit held that the spouses were bound by the clause. *Id.* at 1299. The Eleventh Circuit reasoned that the spouses' interests were "completely derivative" of their husbands, and "thus directly related to, if not predicated upon" the signatory's conduct. *Id.*

In *Hugel*, two corporations, which were owned and controlled by a party bound by a forum-selection clause, were held to the forum-selection clause despite being not being parties to the "General Undertaking." 999 F.2d at 210. By involving the party's two non-signatory corporations in the course of the dispute, the district court found that they were "so closely

related" to the dispute to be bound by the forum-selection clause. *Id.* The Seventh Circuit upheld this finding. *Id.*

Much like the parties in *Lipcon* and *Hugel*, MoistTech is "so closely related" to the dispute that it was foreseeable that it would be bound by the forum-selection clause. While MoistTech is omitted as a signatory, MoistTech is omnipresent throughout the Agreement. In the "Recitals" to the Agreement, MoistTech Corporation and two signed parties (John Fordham and Roger Carlson) are collectively referred to as the "MoistTech Parties." (Doc. 7-1:2). In Article I of the Agreement, Fordham and Carlson acknowledged receipt of the "MoistTech assets"—made up of "various assets, both tangible and intangible, acquired for or utilized in the manufacture and sale of products of the MoistTech division" of Sensortech. (Doc. 7-1:3). Much like the owner of the two non-signatory corporations in *Hugel*, who involved the corporations in the dispute, Fordham and Carlson, as owners of MoistTech, agreed "to pay, perform, or discharge and *shall cause MoistTech Corp*. to pay, perform, or discharge all debts, liabilities, contracts and obligations relating to the MoistTech assets…" 999 F.2d at 210; (Doc. 7-1:3) (emphasis added).

Sensortech contracted to "be responsible for handling, and shall indemnify and hold harmless *the MoistTech Parties* from, all warranty, products liability and other customer related claims arising out of the sale of RF products, for all sales of the products made at any time." (Doc. 7-1:4) (emphasis added). The collective "MoistTech Parties" includes MoistTech Corporation. Furthermore, the Agreement states that MoistTech Corporation will be responsible for, and "Fordham and Carlson *shall cause MoistTech Corp*. to indemnify and hold harmless," warranty, products liability, and customer related claims from the sale of NIR products. (Doc. 7-1:4) (emphasis added). Similar to the owner in *Hugel*, Fordham and Carlson have included MoistTech in the Agreement to the point that it is so closely related to the Agreement that it is

4

foreseeable MoistTech will be bound. 999 F.2d at 209. Additional benefits and obligations accorded to MoistTech are found in the "Release of Corporate and Shareholder Claims" (Doc. 7-1:7) and the "Expenses" subsection to Article IV of the Agreement (Doc. 7-1:7-8).

Most relevant to the current dispute is the "Intellectual Property" paragraph under Article I of the Agreement. The paragraph is listed in full below:

> **1.9 Intellectual Property.** No value has been placed on Sensortech intellectual property including hardware design, software and firmware design used in its products. *The parties acknowledge that much of the intellectual property relating to the Human Machine Interface ("HMI") and Input/Output ("I/O") protocols is presently used in both the RF and NIR product lines and will continue to be used independently by both Sensortech and MoistTech Corp. in the future to develop and maintain products.* Source codes for software and firmware have been previously provided to Carlson and Fordham and have been updated with the latest version available before the Effective Date. *Sensortech and the MoistTech Parties may each develop, alter, enhance, and employ any and all of the intellectual property described herein to suit the future use each deems appropriate.* For avoidance of doubt, the parties acknowledge that as of the completion of the stock redemption contemplated by this Agreement, *Sensortech and the MoistTech Parties will each have and retain a joint, undivided and equal ownership interest in all elements of hardware, software and firmware design, documentation and know-how associated with all Sensortech products as they existed on the Effective Date. Neither Sensortech, on the one hand, nor the MoistTech Parties, on the other hand, shall have any duty to account to the other for the use of or profit from their independent exploitation and development of this intellectual property.* Sensortech will not be required to provide *MoistTech* with maintenance, repair, enhancement or other support of any of the above-described intellectual property after the Effective Date. *MoistTech Corp. will not be required to provide Sensortech with maintenance, repair, enhancement or other support of any of the above-described intellectual property after the Effective Date. Notwithstanding the foregoing, trademarks, trade names, domain names and rights to website that are unique to existing MoistTech products are deemed assigned to the MoistTech Parties for their exclusive use.*

(Doc. 7-1:4) (emphasis added).

MoistTech is both benefitted and burdened by this paragraph. MoistTech has been linked to the Agreement through their inclusion as one of the "MoistTech Parties." MoistTech's interests are "completely derivative" and "directly related to, if not predicated upon" the signed

5

parties to the Agreement. *Lipcon*, 148 F.3d at 1299. Both taking the Agreement as a whole and in considering the relevant paragraph for the current dispute, MoistTech is so "closely related" to the Agreement that it is bound to the forum-selection clause. *Id.*

Plaintiff argues that the current dispute is akin to that in *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (11th Cir. 2009). The Court disagrees. In *Cooper*, the Eleventh Circuit concluded that non-signatories were not bound by a Dutch choice of law provision. *Id.* The Court stated that there was no evidence that a close relationship existed between the signatory and the non-signatories. *Id.* at 1170. The Court opined that "[e]ven assuming that Meridian and the Vulcan appellants have the same president and beneficial owner, that alone is not sufficient to demonstrate that the Vulcan appellants are Meridian's alter egos, permitting us to disregard their individual corporate identities." *Id.* Here, the Court is not simply associating MoistTech with Fordham and Carlson because they are principals of the corporation. Rather, the Court is relying on the pervasive involvement of MoistTech Corporation in the Agreement. The numerous grants of burdens and benefits to MoistTech stands in stark contrast to the lack of evidence of a close relationship in *Cooper*. *Id.*

The Court finds the current dispute is more analogous to *XR Co. v. Block & Balestri, P.C.*, 44 F.Supp.2d 1296 (S.D. Fla. 1999). In *XR Co.*, XR Co.'s sole and controlling shareholder was bound to a forum-selection clause contained in an agreement to which he was a non-signatory in his individual capacity but to which his company was a signed party. *Id.* at 1300-01. "[I]t is undisputed that Koeppel is the sole and controlling shareholder of XR Co. and that the acquisition of XR Co. would inure to his personal benefit. Therefore, even if Koeppel did not sign the letter agreement in his individual capacity, he is still bound by the forum selection clause contained in the agreement." *Id.* at 1301. MoistTech is in a similar position to Koeppel

(the sole and controlling shareholder of the signatory corporation). While not a signatory to the Agreement, MoistTech has a close relationship with two of the signatories—Fordham and Carlson. *See* (Doc. 2:2-3); *See also* (Doc. 7-1:1). Fordham and Carlson's participation in the Agreement inured to MoistTech's personal benefit. This benefit is evinced throughout the Agreement. *See generally* (Doc. 7-1). Taking the benefits of the Agreement, MoistTech is bound by the forum-selection clause.

In conclusion, MoistTech was so "closely related" to the dispute that it was "foreseeable" that it would be bound. *Lipcon*, 148 F.3d at 1299 (quoting *Hugel*, 999 F.2d at 209). MoistTech's interests were "completely derivative of", that is, "directly related to, if not predicated upon" the signed parties. *Id.* As such, MoistTech is bound to the forum-selection clause included in the Agreement. The conclusion that MoistTech is bound by the forum-selection clause should not be construed in any way as reflecting a view on the merits of the substantive claims.

### The Forum-Selection Clause is Valid and Enforceable

The enforceability of a forum-selection clause in this federal-question case is governed by federal law. *Loeffelholz v. Ascension Health, Inc.*, 34 F. Supp. 3d 1187, 1189 (M.D. Fla. 2014). Forum-selection clauses are presumed valid and enforceable unless the plaintiff "makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Rucker v. Oasis Legal Finance, L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)). "A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281 (citing *Lipcon*, 148 F.3d at 1296).

Plaintiff has not argued that the forum-selection clause is invalid. *See generally* (Doc. 10). No evidence has been presented to suggest that the Agreement or the forum-selection clause that it contains were induced by fraud or overreaching. Plaintiff will not be deprived of its day in court—rather, Plaintiff would just have to change its venue to the agreed-upon forum. Any potential financial difficulty that a party may have in litigating in the selected forum is not a sufficient ground standing alone to prevent enforcement of a valid forum-selection clause. *Rucker*, 632 F.3d at 1237. Plaintiff will not be deprived of a remedy from the chosen law. Nor would enforcement of the clause contravene public policy. Given that none of the factors encourage invalidation of the forum-selection clause, the clause is valid. Additionally, the clause has not been waived.

### The Forum-Selection Clause is Mandatory

Courts often characterize forum-selection clauses as either "permissive" or "mandatory." A mandatory clause "dictates an exclusive forum for litigation under the contract." *Slater v. Energy Services Group Inter., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n. 24 (11th Cir. 1999)). The forum-selection clause contained in the Agreement is transcribed in full below:

> **4.5 Governing Law; Jurisdiction; Venue.** This Agreement shall be governed by the laws of the State of California, without regard to the conflict of laws rules of the State of California or any other jurisdiction that would call for the application of the laws of any jurisdiction other than the State of California. By execution and delivery of this Agreement, the parties hereto agree and accept that *any legal action or proceeding shall only be brought in the federal or state courts for the State of California, County of Ventura, and the parties expressly waive any objection to personal jurisdiction, venue or forum non conveniens.*

(Doc. 7-1:9) (emphasis added).

Use of the word "shall" is most reasonably interpreted to mandate venue. *Slater*, 634 F.3d at 1330. The clause at issue uses the phrase "shall only." (Doc. 7-1:9). The only reasonable

interpretation of this clause is that "the federal or state courts for the State of California, County of Ventura" is the exclusive forum for litigation under the Agreement. Therefore, all claims within the scope of the forum-selection clause must be brought in a court in Ventura County, California, and not in the District Court for the Middle District of Florida.

### The Complaint is Within the Scope of Forum-Selection Clause

Plaintiff contends that the Complaint does not fall within the scope of the Agreement's forum-selection clause. Specifically, Plaintiff argues that the claims are not related to the Agreement. *See* (Doc. 10:2).

The language of the clause determines whether a claim falls within the scope of a forum-selection clause. *Bahamas Sales Associate, L.L.C. v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) (Citing *Slater*, 634 F.3d at 1330-31). The relevant portion of the forum-selection clause in the Agreement states that "*any legal action or proceeding* shall only be brought in the federal or state courts for the State of California, County of Ventura." (Doc. 7-1:9) (emphasis added). This clause is very broad. The clause is not limited to "[a]ny dispute, controversy or claim arising out of or relating to this Agreement…" as is found in the arbitration clause found in the next paragraph of the Agreement. (Doc. 7-1:9). However, the Court would be mistaken to allow the clause to expand without bounds. The Court must find a direct relationship between the Complaint and the Agreement and will examine the Complaint against the Agreement.

Plaintiff alleges two claims: false advertising in violation of the Lanham Act and common law unfair competition under Florida law. (Doc. 2:7). Plaintiff's description in the "Background" section of the Complaint almost identically mirrors the text of the "Recitals" in the Agreement. (Doc. 2:2-3, Doc. 7-1:2). In Plaintiff's Complaint, Plaintiff refers to an

9

"understanding" and "arrangement" that was reached to separate MoistTech from Sensortech. (Doc. 2:3). Defendant argues that the Plaintiff is referring to the Agreement. (Doc. 6:2).

In the Complaint, Plaintiff states that "[a]s part of the arrangement, Sensortech was supposed to transfer to MoistTech the entire NIR inventory of instruments and parts together with all original drawings, software… all copies of all engineering and manufacturing documents and files that related to the NIR product line parts…" (Doc. 2:3). Plaintiff then alleges as part of "Sensortech's Unlawful Conduct" that "Sensortech assembled moisture controls systems utilizing NIR technologies, by utilizing an inventory of components that should have been provided to MoistTech as part of its separation from Sensortech." (Doc. 2:4-5). Additionally, the Complaint alleges that the Defendant utilized photographs that "[i]n at least *some* instances… were created by MoistTech or one or more of its owners after the separation of MoistTech from Sensortech." (Doc. 2:5) (emphasis added). The use of "some" suggests that the remainder of photographs were created *before* the separation of MoistTech and Sensortech. The Complaint alleges that the Defendant began selling NIR moisture control systems with similar appearance to the MoistTech NIR products. (Doc. 2:4). The Complaint also alleges that the Defendant copied from the Plaintiff's website. (Doc. 2:5)

The Agreement contains a clause regarding intellectual property. *See* (Doc. 7-1:4). Relevant to the dispute are the following portions of the clause:

> The parties acknowledge that much of the intellectual property relating to the Human Machine Interface ("HMI") and Input/Output ("I/O") protocols is presently used in both the RF and NIR product lines and will continue to be used independently by both Sensortech and MoistTech Corp. in the future to develop and maintain products.
>
> Sensortech and the MoistTech Parties may each develop, alter, enhance, and employ any and all of the intellectual property described herein to suit the future use each deems appropriate.

10

> For avoidance of doubt, the parties acknowledge that as of the completion of the stock redemption contemplated by this Agreement, Sensortech and the MoistTech Parties will each have and retain a joint, undivided and equal ownership interest in all elements of hardware, software and firmware design, documentation and know-how associated with all Sensortech products as they existed on the Effective Date.
>
> Neither Sensortech, on the one hand, nor the MoistTech Parties, on the other hand, shall have any duty to account to the other for the use of or profit from their independent exploitation and development of this intellectual property.
>
> Notwithstanding the foregoing, trademarks, trade names, domain names and rights to website that are unique to existing MoistTech products are deemed assigned to the MoistTech Parties for their exclusive use.

(Doc. 7-1:4).

The "Intellectual Property" clause in the Agreement directly relates to the Plaintiff's claims. The "Intellectual Property" clause discusses the permitted use of products, hardware, design, and documentation at the time of the Agreement and into the future. It also explains rights relating to MoistTech's website.

Plaintiff argues that its claims are not for a breach of contract and, therefore, that the claims are separate from the Agreement. (Doc. 10:8). The claims, however, germinate from the "Intellectual Property" clause in the Agreement—precisely why the Plaintiff's Complaint commences by describing an "understanding" between the parties and that as part of "Sensortech's unlawful conduct," the Defendant "utiliz[ed] an inventory of components that should have been provided to MoistTech as part of its separation from Sensortech." (Doc. 2). The Eighth Circuit has held that tort claims that involved the same operative facts as would a parallel claim for breach of contract, even though the party did not allege a breach of contract in the complaint, should be held to forum-selection clauses in the contract. *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (citing *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993)). Avoidance of pleading breach of contract claims would not

11

allow parties to avoid an otherwise applicable forum-selection clause. *Id.* Here, if Plaintiff chose to file a breach of contract claim from the Agreement, the same operative facts would be at issue. Therefore, Plaintiff should be held to the forum-selection clause in the Agreement.

While some of the alleged unlawful conduct in the complaint is separate from the Agreement, the Complaint describes conduct that substantively relates to the Agreement. Plaintiff's claims arise from the relationship established in the Agreement. As such, the Court finds that the Complaint is within the scope of the Agreement and the forum-selection clause. Again, the conclusion that MoistTech is bound by the forum-selection clause should not be construed in any way as reflecting a view on the merits of the substantive claims.

## Defendant's Request for Transfer of Venue

A defendant that has properly removed a case to federal court can still attempt to transfer the case to another division or district. *Hollis v. Florida State University*, 259 F.3d 1295, 1300 (11th Cir. 2001). Transfer of venue for an action brought in federal court is governed by 28 U.S.C. § 1404(a) *Change of venue*. It provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or *to any district or division to which all parties have consented*.

28 U.S.C. § 1404(a) (2012) (emphasis added).

A forum-selection clause may be enforced through a motion to transfer under § 1404(a). *Atlantic Marine Const. Co., Inc. v. U.S. District Court for the Western District of Texas et al.*, 134 S.Ct. 568, 579 (2013). District courts should ordinarily transfer a case to the forum specified in a valid forum-selection clause. *Id.* at 581. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied" when a valid forum-selection clause exists. *Id.*

While a district court ordinarily weighs relevant factors to determine if a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice," (28 U.S.C. § 1404(a)), the analysis of transfer under § 1404(a) changes when a valid forum-selection clause governs the parties. *Atlantic Marine Const. Co., Inc.*, 134 S.Ct. at 581. By enforcing valid forum-selection clauses, district courts protect the legitimate expectations of the parties and "further[] vital interests of the judicial system." *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring)).

Accordingly, the plaintiff's choice of forum merits no weight. *Id.* Instead, the plaintiff has the burden to establish that transfer to the forum specified in the forum-selection clause is unwarranted. *Id.* In *Atlantic Marine Const. Co., Inc.*, the Supreme Court opined that a district court evaluating a defendant's motion to transfer under § 1404(a) based on a forum-selection clause should not consider arguments regarding the parties' private interests. *Id.* at 582. Rather, the Court stated that all private interests are expressed in the forum-selection clause, which would weigh in support of transfer. *Id.* at 583-84. Only public-interest factors are relevant. *Id.* at 582.

Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Rivas ex rel. Estate of Gutierrez v. Ford Motor Co.*, 17 Fla. L. Weekly Fed. D611 (M.D. Fla. 2004).

**1. Court Congestion**

The Middle District of Florida is renowned as one of the most congested Federal Court dockets in the nation. *Id.* The Central District of California has less pending cases per judgeship and a shorter median time from filing to disposition for civil cases than the Middle District of Florida. Administrative Office of the United States Courts, *Federal Court Management Statistics—Comparison Within Circuit* (2014). A transfer to a less crowded docket with a quicker disposition time would be a benefit to both parties. Therefore, this factor encourages transfer.

### 2. The Local Interest in Having Localized Controversies Decided at Home

Plaintiff is a corporation "organized and existing under the laws of Florida" and "has its principal place of business in Manatee County, Florida." (Doc. 2:1). Defendant "is a corporation organized and existing under the laws of Illinois and has its principal place of business in California." (Doc. 2:1). Local interest can be found in both the Middle District of Florida and in the Central District of California. Therefore, this factor does not weigh against transfer.

### 3. Interest in Having the Trial of a Diversity Case in a Forum that is at Home with the Law that Must Govern the Action

This factor is inapplicable because this case was not removed as a diversity case.

### 4. Avoidance of Unnecessary Problems in Conflict of Laws, or in the Application of Foreign Law

This factor does not weigh against transfer.

### 5. The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Defendant's principal place of business is in California. (Doc. 2:1). Transfer to the Central District of California would not burden citizens of an unrelated forum because that

District has an interest in the case. Additionally, Plaintiff has not demanded a jury trial. Therefore, this factor does not weigh against transfer.

In sum, the Plaintiff has not met the burden of establishing that transfer to the forum specified in the forum-selection clause is unwarranted based on public-interest factors. This Court finds that transfer to the forum established in the forum-selection clause is appropriate.

### CONCLUSION

For the reasons given above, this Court is of the opinion that transfer of this case under § 1404(a) is appropriate. Accordingly, it is

**ORDERED** that Defendant Sensortech's Motion to Transfer under § 1404(a) is hereby **GRANTED**. The Court will not reach the issues of Defendant's Motion to Dismiss or for Stay Pending Arbitration. This case should be transferred to the appropriate court in the Central District of California in accord with the forum-selection clause of the Agreement. The Clerk of Court shall close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of June, 2015.

*[signature]*

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All
Parties and Counsel of Record